**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. **14-cv-01667-MSK-MJW**

**DR. JOHN RODELL,**

     **Plaintiff,**

**v.**

**OBJECTIVE INTERFACE SYSTEMS, INC.,**

     **Defendant.**

_____

**ORDER ON DEFENDANT'S MOTION TO STRIKE JURY DEMAND AND
OPINION AND ORDER GRANTING IN PART DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court on Defendant's Motion for Partial Summary Judgment (**#58**), Plaintiff's Response (**#63**) and Defendant's Reply (**#64**). Also at issue is Defendant's Motion to Strike Plaintiff's Jury Demand (**#30**) and the Plaintiff's Response (**#31**). The Court exercises jurisdiction in this action pursuant to 28 U.S.C. § 1331.

## I.     MATERIAL FACTS

The following is a summary of the pertinent undisputed facts. Where the facts are in dispute, the Court has construed them most favorably to the non-movant, Dr. Rodell. As necessary, there may be further elaboration in the Courts analysis.

Plaintiff, Dr. John Rodell, was employed by Defendant, Objective Interface Systems, Inc. (OIS), from October of 2007 through September of 2012. Dr. Rodell is over forty years old.

On October 17, 2007, OIS sent Dr. Rodell a letter offering him a position at OIS. As relevant here, Dr. Rodell's offer letter included a provision that after six months of employment, he would be entitled to receive a stock option for 50,000 shares in OIS.

On October 22, 2007, Dr. Rodell accepted employment with OIS. Several terms of a written employment agreement, executed by Dr. Rodell and OIS, are important to this dispute. First, the agreement made no mention of Dr. Rodell's entitlement to stock options. Second, it did not include any representation regarding his compensation. In fact, Provision 3(a) allowed OIS to adjust Dr. Rodell's compensation as it deemed appropriate, and Provision 3(c) allowed OIS to terminate Dr. Rodell without cause upon 30 days' notice, or alternatively, without notice if he was paid for 30 days in accordance with his current salary. Provision 3(d) permitted OIS to fire him for cause without notice or severance. Dr. Rodell also received an employee manual, in which OIS agreed not to discriminate against its employees based on age or other attributes.

In April of 2008, Dr. Rodell had been employed for six months, but had not received the incentive stock option. Dr. Rodell testified that around this time he asked William Beckwith, the CEO of OIS, about the stock option, and was told that OIS was in the process of revamping its employee stock option plan. Eventually, in February of 2011, OIS offered Dr. Rodell a stock option to purchase 155,000 shares under a new plan.[1]

From 2007 through mid-2011, Dr. Rodell's employment ran smoothly. Beginning in mid-2011, circumstances shifted. In July of that year, Dr. Rodell states that Mr. Beckwith instructed him to "make false promises to a government contractor." Mr. Beckwith directed Dr. Rodell to contact Jenny Gregg, an employee of Scientific Research Company (SRC), with whom OIS did business, regarding two missing documents that OIS was supposed to deliver. Mr. Beckwith told

---

[1] Dr. Rodell suggests that he did not understand that the option offered in 2011 was in place of the option mentioned in his offer letter.  Rather, he understood it as supplementing the prior offer.

Dr. Rodell to inform Ms. Gregg that the relevant content of the missing documents had been included and incorporated into other documents OIS previously provided to SRC. Dr. Rodell did so per Mr. Beckwith's instructions. Dr. Rodell later learned that his representations to Ms. Gregg and SRC were false. Dr. Rodell expressed concerns with OIS's false representations to Mr. Beckwith, but does not elaborate as to how or if this situation was ever resolved.

In the fall of 2011, Mr. Beckwith spoke with Dr. Rodell regarding his commissions. Mr. Beckwith indicated that some of Dr. Rodell's sales commission should be split with, or allocated to Brian Caughel, a salesman who worked with Dr. Rodell. Mr. Beckwith asked Dr. Rodell to come up with a fair percentage to give to Mr. Caughel, but before Dr. Rodell gave Mr. Beckwith a figure, Mr. Beckwith allocated more to Mr. Caughel than what Dr. Rodell believed was fair.

Dr. Rodell's responsibilities at OIS changed in 2012. Early that year, OIS hired an employee named Charlie Booth[2] to take over sales, and Dr. Rodell was demoted.  Specifically, he was directed to only pursue new sales. OIS also issued a new compensation plan to Dr. Rodell that unfavorably changed his pay structure. Dr. Rodell believed the pay cut was unfair, and when he asked his supervisors why he was "asked to take a pay cut when no one else is," he was not given an explanation. Dr. Rodell testifies that he raised his concerns to Mr. Beckwith and Mr. Booth several times throughout 2012 and was told to put his concerns in writing.

Later in 2012, Dr. Rodell and Mr. Beckwith had a disagreement regarding a candidate for employment. Dr. Rodell testifies that he was asked to interview and hire James Jones, Jr., whose father was a government employee. According to Dr. Rodell, Mr. Jones's father could potentially influence or promote government use of OIS products. Dr. Rodell told Mr. Beckwith he would not hire Mr. Jones because he was not qualified for the position. Dr. Rodell admits that he did not believe hiring Mr. Jones was criminal or in violation of any regulations.

---

[2] As best the Court can determine, Mr. Booth's age is not in the record.

On September 28, 2012, Dr. Rodell expressed concerns about his pay reduction in an email to Mr. Beckwith. He stated, "I believe that I'm . . . being treated unfairly by OIS." He pointed to the fact that when he was hired, his total compensation was $180,000, divided evenly between a base salary, incentive pay, and sales commission, but the new compensation plan combined incentive pay with sales commission, which meant that to make $180,000, he would have to personally sell 3 million dollars' worth of OIS products. On September 29, 2012,  the day after Dr. Rodell sent his mail, OIS terminated his employment with OIS. Mr. Beckwith's explanation was that Dr. Rodell he did not meet his quota for 2012, and, as a secondary reason, because Dr. Rodell had a tendency to "stick his heels in the ground" when there were differences of opinion between him and OIS management.

There is no dispute that Dr. Rodell's sales quota for the year was $2.1 million, and that as of September 2012, Dr. Rodell was significantly below his quota (in fact, he had only reached some $205,000). However, Dr. Rodell testified that although the quota would not ordinarily be unreasonable, it was "not achievable because . . . the product" he was asked to sell was not accredited or certified as an IT hardware product for use in government systems. Mr. Booth agrees that Dr. Rodell's sales were low because "OIS's customers were not ready to buy the product because the product still needed work." Mr. Booth further opines that the reason that Dr. Rodell was given for termination – that he was not making his sales quota – was a "guise," and that he was really let go because "he lodged a written concern about his pay structure."

## II.      STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure permits summary judgment where there are no genuine disputes of material fact and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A factual

dispute is "genuine" if the evidence presented in support of and in opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court views the evidence in the light most favorable to the non-moving party, but may disregard "mere allegations," "conclusory and self-serving affidavits" or inadmissible evidence. *See Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir 2004); *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1360-61 (10th Cir. 1997); *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995).

Substantive law governs the elements that must be proven for a particular claim or defense, the standard of proof, and which party bears the burden of proof. *See Anderson*, 477 U.S. at 248; *Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). If the moving party bears the burden of proof at trial, it must support its motion with credible evidence showing that, if uncontroverted, the moving party would be entitled to a directed verdict. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). The burden then shifts to the non-moving party to produce evidence demonstrating the existence of a genuine factual issue for trial. *Id.* Similarly, where the moving party does not bear the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or claims that the non-moving party is obligated to prove. *See* Fed.R.Civ.P. 56(c)(1)(A); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). Once the moving party has met its burden, the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir. 1991); *Perry,* 199 F.3d at 1131. If there is insufficient evidence from which a reasonable fact-finder could find for the non-moving party as to each element of its claim, summary judgment is proper. *Adams v. American*

*Guarantee & Liability Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000); *White v. York Intern.*

*Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

### III.    ANALYSIS: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This action was initiated in May of 2014. In his First Amended Complaint (**#43**), Dr.

Rodell asserts seven claims for relief: (1) age discrimination under the Colorado Anti-

Discrimination Act, C.R.S. § 24-34-401, *et seq.* (CADA); (2) retaliation under Title VII and the

Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*; (3) violation of the

Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq.*; (4) promissory estoppel; (5) breach of

contract; (6) unjust enrichment; and (7) wrongful discharge.[3] OIS moves for summary judgment

on claims 1, 2, 4, 6, 7, and for partial summary judgment on claim 5. OIS additionally requests

summary judgment on its affirmative defense that Dr. Rodell's claims related to OIS's failure to

provide the 50,000 incentive stock options are time-barred.

### A.  Statute of Limitation

OIS argues that Dr. Rodell's claims for breach of contract (claim 5) and for promissory

estoppel (claim 4) relative to the stock option promised in the initial employment offer are time-

barred pursuant to C.R.S. § 13-80-101(1)(a).

Breach of contract and promissory estoppel claims are governed by state law.  Colorado

law requires breach of contract claims to be brought within three years of accrual. *See C.R.S. §*

---

[3] OIS previously moved to dismiss (**#33**) Dr. Rodell's claims for promissory estoppel and unjust enrichment on the grounds that they cannot be maintained where there is an express contract governing the same conduct for which Dr. Rodell seeks equitable relief. The Magistrate Judge issued a Recommendation (**#45**) finding that the promissory estoppel claim should be dismissed because, under Colorado law, equitable relief is not available where there is an enforceable contract, and Dr. Rodell has not pled promissory estoppel as an alternative theory of relief.  The Recommendation also found that Dr. Rodell did plead unjust enrichment as an alternative theory, thus concluded that his unjust enrichment claim should not be dismissed. The Court, however, concluded that Dr. Rodell would be allowed to plead both promissory estoppel and unjust enrichment as alternative bases for recovery, and denied OIS's Motion to Dismiss (**#48**).

13-80-101(1)(a). Promissory estoppel claims are "contractual in nature," and are similarly subject to a three-year statute of limitation. *See Bank of Am., N.A. v. Dakota Homestead Title Ins. Co.*, 553 Fed. App'x 764, 767 (10th Cir., Dec. 26, 2013); *Berg v. State Bd. of Agriculture*, 919 P.2d 254, 261 (Colo. 1996).

A defendant bears the initial burden to demonstrate that a plaintiff's claims are time-barred. *Ramsey v. Culpepper*, 738 F.2d 1092, 1097-98 (10th Cir. 1984). A claim accrues when a plaintiff discovered, or a reasonably diligent plaintiff would have discovered, the facts constituting the violation. *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 653 (2010).

Per his offer letter, Dr. Rodell was entitled to exercise an option to acquire 50,000 shares of stock six months after he began his employment. He started at OIS in October 2007, and thus anticipated exercising the stock option on or about April 22, 2008. OIS did not provide Dr. Rodell with the option as expected, and in mid-2008 Dr. Rodell asked Mr. Beckwith why not. Mr. Beckwith told Dr. Rodell "not to worry," that the option to purchase 50,000 shares would be included in the "revamp" of the OIS stock option plan.

From a superficial perspective, Dr. Rodell knew that OIS did not honor its promise in Spring 2008. This is when his claim accrued, and consequently he was obligated to take legal action within three years of such default – in Spring of 2011. Dr. Rodell did not file this action until May of 2014, more three years after the limitation period expired.

However, the Court's analysis does not end there. Dr. Rodell argues, somewhat obliquely, that because he was "put off" by Mr. Beckwith's reassurances, the limitation period should be extended by application of the doctrine of equitable tolling.

Equitable tolling allows an otherwise time-barred claim to proceed if a plaintiff can demonstrate that a defendant wrongfully impeded a plaintiff's ability to bring a claim or that

truly extraordinary circumstances otherwise prevented the plaintiff filing a claim. *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1099 (Colo. 1996); *see also Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 858 (Colo. App. 2007). To satisfy this burden, a plaintiff must come forward with evidence showing that a defendant engaged in certain conduct that discouraged him from commencing suit, and that the defendant knew and intended that the plaintiff would rely on the conduct in not filing a lawsuit. *See Gognat v. Ellsworth*, 224 P.3d 1039, 1049 (Colo. App. 2009). For example, the fact that a defendant informed the plaintiff that it was "investigating" a situation and would "get back to" the plaintiff, is not enough to toll the statute of limitation. *Neuromonitoring Assocs. v. Centura Health Corp.*, 351 P.3d 486, 490 (Colo. App. 2012). Likewise, that a defendant "assured" the plaintiff that "things would be worked out fairly" is insufficient. *Gognat*, 224 P.3d at 1049.

Dr. Rodell's equitable tolling argument is unavailing. When Dr. Rodell asked about the promised stock option in mid-2008, he was told that OIS was revamping its stock option program. Considering this as a reassurance[4] that dissuaded Dr. Rodell from bringing suit, the accrual period for the claim would change to the date the re-vamped stock option plan became known to Dr. Rodell. According to Dr. Rodell, the new plan did not provide or address the previously promised stock option. Rather, it offered prospective options to all employees according to a formula unrelated to what was originally promised to Dr. Rodell. According to Dr.

---

[4] The Court also has doubt that such vague reassurances constitute "wrongful conduct" by OIS that can be said to have lulled Dr. Rodell into not timely filing suit. Both *Gognat* and *Neuromonitoring* present similar situations in which a plaintiff was aware that the defendant was in breach of the parties' contract, but in each circumstance, the plaintiff ostensibly relied upon ambiguous assertions by the defendant that "things would be worked out fairly" (*Gognat*) or that the defendant would "investigat[e]" the matter and "get back to" the plaintiff (*Neuromonitoring*). In both cases, the Colorado Court of Appeals concluded that such statements were insufficient to warrant application of the doctrine of equitable tolling. *See Gognat*, 224 P.3d at 1049; *Neuromonitoring*, 351 P.3d 486, 490. This Court sees little distinction between those equivocal promises to remedy the issue at some point in the future and OIS's representation that a future revamp of the stock option plan would address Dr. Rodell's concerns.

Rodell, this was not in satisfaction for the prior promise by OIS. Such recognition put him on notice that the original promise was not being honored. Thus, at most, the tolling of the limitation period extended the accrual date to the date the new plan was introduced, February 11, 2011. Under this theory, timely prosecution of Dr. Rodell's claims required initiation of an action by February 11, 2014. Because this action was not filed until May 2014, beyond the extended limitation period, Dr. Rodell's breach of contract and promissory estoppel claims related to OIS's failure to provide him with a stock option as stated in his offer letter are time-barred. Entry of summary judgment in favor of OIS and against Dr. Rodell is appropriate on these claims.

### B. Age Discrimination

Next, OIS requests summary judgment on Dr. Rodell's age discrimination claim.[5] Dr. Rodell brings this claim under CADA, which makes it illegal for an employer to "refuse to hire, to discharge, to promote or demote, to harass during the course of employment, or to discriminate in matters of compensation, terms, conditions, or privileges of employment against any person otherwise qualified because of . . . age." C.R.S. § 24-34-402(1)(a).[6] A court examines CADA claims under the framework enumerated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bodaghi v. Dep't of Natural Res.*, 995 P.2d 288, 297-98 (Colo. 2000); *see also*

---

[5] Dr. Rodell also alleges, as part of his first claim, retaliation in violation of CADA. Because the legal standards applicable to retaliation under CADA are the same as those applicable to retaliation under the ADEA, which is the subject of Dr. Rodell's second claim, the Court will address the CADA retaliation in its analysis of Dr. Rodell's second claim. *See Fuller v. Seagate Tech., LLC*, 651 F.Supp. 1233, 1242 (D. Colo. 2009) (courts apply the same legal standard to both CADA and ADEA claims).

[6] Dr. Rodell does not raise an ADEA age discrimination claim, but the Court notes that both CADA and the ADEA are designed to prevent discriminatory conduct based on age, require similar proof, and are examined under a similar analytical framework. *Compare* 29 U.S.C. § 621(b); *with* C.R.S. § 24-34-402(1)(a) *and Agnello v. Adolph Coors. Co.*, 689 P.2d 1162, 1164-65 (Colo. App. 1984); *see Bank v. Allied Jewish Federation of Colo.*, 4 F.Supp. 3d 1238, 1243 (D. Colo. 2013).

*Fuller v. Seagate Tech., LLC*, 651 F.Supp.2d 1233, 1242-43 (D. Colo. 2009). An employee must first establish a *prima facie* case for discrimination. *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007). If the employee is able to do so, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its conduct. *Id.* The burden then returns to the employee to demonstrate that the proffered reason is a pretext for illegal discrimination. *Id.*

To establish a *prima facie* case of age discrimination, an employee must demonstrate that: (1) he is within the protected age group (over forty years old); (2) his job performance was satisfactory; (3) he suffered adverse action; and (4) there is evidence giving rise to an inference of discrimination. *Bennett v. Windstream Commc'ns., Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015); *Paup v. Gear Prods., Inc.*, 327 Fed. App'x 100, 108 (10th Cir., June 19, 2009); *see O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311-13 (1994). The *prima facie* hurdle is not an onerous one. *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).

Here, Dr. Rodell contends that OIS engaged in discrimination when it (1) unfavorably changed his compensation schedule; (2) terminated him; and (3) did so without providing him severance pay. OIS does not dispute Dr. Rodell's ability to establish the first three elements of his claim. Rather, OIS challenges Dr. Rodell's ability to establish whether the three alleged adverse actions occurred under circumstances that give rise to an inference of discrimination.

An employee may demonstrate such circumstances creating such an inference in a variety of ways. For example, a plaintiff may show that similarly situated but younger employees did not suffer an adverse action. *See Beaird v. Seagate Tech, Inc.*, 145 F.3d 1159, 1167 (10th Cir. 1998). Or, a plaintiff might rely on preferential treatment given to employees outside of a protected class. *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005). However, for disparate treatment to permit an inference of discrimination a plaintiff must show that the similarly-situated employee

is truly comparable — that is, the employee shared the same terms of employment, supervisor, and work history. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000). An employee's subjective belief that he or she has been discriminated against is insufficient to support an inference of discriminatory intent. *See Adamson v. Multi Comty. Diversified Servs., Inc.*, 514 F.3d 1136, 1151 (10th Cir. 2008). In some instances, it may be appropriate for a court, when examining the fourth element of a *prima facie* case, to consider the employer's reason for the adverse action in the context of determining whether there is sufficient evidence from which discrimination may be inferred. *See id.*; *see also Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1216 (10th Cir. 2003).

1.   Change in Compensation Plan

The Court first addresses Dr. Rodell's contention that the change in his compensation plan was discriminatory. He states that he was the only employee whose compensation was altered by the new (less-favorable) pay schedule that effectively resulted in a pay cut, and from this he draws the inference that it was due to his age.

Dr. Rodell's statement is insufficient to create an inference of age discrimination for several reasons. First, the statement is inaccurate. Dr. Rodell's email records reflect that he was not the only employee subject to the pay schedule nor for whom the pay schedule had an adverse effect. Specifically, in email correspondence, Dr. Rodell notes that Mr. Caughel was likewise subjected to the new compensation plan, and suffered the same ill-effects. From the flip side, there is no evidence that any younger employee was exempt from the plan or its impact.

Second, Dr. Rodell's testimony reflects that he never believed that the new compensation plan was imposed because of his age. When Dr. Rodell was asked at his deposition why he thought his pay was reduced, he responded, "Probably because [Mr. Beckwith] didn't believe

11

that I was worth the total compensation that was my target up to that point in time" and "didn't believe that I was worth what I was getting paid."

Third, Dr. Rodell acknowledges that OIS was suffering financially in 2012 and was unlikely to meet its company-wide targets. There is otherwise no evidence of discriminatory comments by his supervisors or OIS policies negatively impacting only older employees.

In essence, Dr. Rodell's evidence is limited to his nonspecific and conclusory statement that because the new pay plan adversely impacted him, it must have been implemented with discriminatory motive. This is insufficient to establish a *prima facie* claim of age discrimination.

2.   Termination

The Court turns to Dr. Rodell's contention that OIS "unlawfully used age as a determinative factor in deciding to terminate [him]." The Court is hard-pressed to identify any evidence submitted by Dr. Rodell supporting his contention that he was terminated because of his age. Instead, the evidence (including Dr. Rodell's own testimony) indicates that he was terminated for other reasons. When Dr. Rodell was asked at his deposition, "you don't believe you were terminated by OIS as a result of the fact that you are over 40 years old, do you," he responded, "No."  Dr. Rodell opined that he was terminated because he "asked the question, why am I taking a pay cut?"[7] There is likewise evidence that Dr. Rodell's termination was due to his failure to meet his sales quota. Dr. Rodell admits that he was "not anywhere near close to [his] quota." Further, he testifies that Mr. Beckwith told him he was terminated because he failed to meet his quota, to which Dr. Rodell had "no response . . . except to agree." Dr. Rodell contends that he did not meet his quota because he was given a product to sell that was unaccredited. But he does not contend, for example, that he was intentionally given a difficult product to sell

---

[7] Dr. Rodell's evidence that his termination was related to complaints he lodged about his reduced compensation does not show any age-related discrimination, and the Court will further address this in its analysis of Dr. Rodell's retaliation claim.

because of his age. That OIS may have acted unwisely or unfairly in expecting Dr. Rodell to sell an inferior product could be said to reflect bad business decisions, but anti-discrimination laws are only concerned with decisions motivated by discriminatory animus.

Accordingly, the Court finds that Dr. Rodell has again not met the minimal burden to make a *prima facie* case that his termination was influenced by age-based discrimination.

3.   Severance Pay

Dr. Rodell lastly contends that he was denied severance pay because of his age. As evidence of discrimination, he states that other terminated employees were given severance. He makes specific reference to an employee named Tiffany, who he estimated was in her late-20s. Dr. Rodell admits that he does not know why she separated from OIS, whether she was terminated or resigned, the amount of severance she was given, or the terms of her severance, only that he believes she was given "some severance." Dr. Rodell also identifies John Marsden, who he believes to be in his 20s, who was either terminated or resigned. As for Mr. Marsden, Dr. Rodell admits at his deposition that he has "no idea" if Mr. Marsden even received severance.

In some circumstances, it is sufficient for an employee to identify similarly situated employees, not of the protected class, who were treated differently. However, here there is not enough evidence for a reasonable jury to find that the identified persons were similarly situated but for their age. There is no evidence that establishes what the nature of their employment was, why their employment ended, or under what circumstances they were given severance. Indeed, there is a question as to whether they actually received any severance payment. This evidence is far too speculative and unspecific to establish a disparate impact as to severance payment much less to create an inference that it was based upon age.

For the forgoing reasons, the Court finds that Dr. Rodell has failed to come forward with sufficient evidence to make a prima facie showing that the adverse actions he complains of were because of discrimination based on his age. Accordingly, summary judgment in favor of OIS on Dr. Rodell's claim for age discrimination under CADA is granted.

### C.  Retaliation

Dr. Rodell contends that his termination was in retaliation (1) for opposing what he perceived as an unethical business practice by OIS, namely, hiring Mr. Jones[8] (in violation of CADA) and (2) for his complaints regarding his compensation (in violation of the ADEA[9]).

As with discrimination claims, the Court examines ADEA and CADA retaliation claims under the *McDonnell Douglas* framework. *See Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1201-02 (10th Cir. 2008). An employee must establish a *prima facie* case for retaliation by submitting evidence demonstrating that: (1) he or she engaged in protected activity or opposition to discrimination; (2) he or she suffered an adverse employment action that a reasonable employee would consider to be material; and (3) a causal connection existed between the protected activity and the materially adverse action. *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007). OIS challenges Dr. Rodell's ability to establish a *prima facie* case for both alleged instances of retaliation.

---

[8] Dr. Rodell does not specifically allege in the Amended Complaint that his opposition to hiring Mr. Jones was protected conduct or that his termination was in retaliation for his opposition. However, he explained in response to the motion for summary judgment that his opposition to Mr. Jones was part of the basis for OIS's secondary reason for terminating him, namely, OIS's explanation that Dr. Rodell often "stuck his heels in the ground" in response to requests from supervisors.

[9] Though it appears that Dr. Rodell also raises this claim under Title VII, it is only cognizable under ADEA. Title VII does not prohibit discrimination on the basis of age. Regardless, Title VII retaliation claims are analyzed pursuant to the same legal framework as retaliation under the ADEA, and thus the outcome remains the same. *See Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004) (applying the *McDonnell Douglas* framework to Title VII retaliation claims).

1.   Retaliation under CADA

OIS contends that Dr. Rodell cannot demonstrate that his opposition to hiring Mr. Jones constituted protected conduct under CADA.

Protected activity includes complaining of, reporting, or otherwise challenging an employer's practice that is unlawful, most often a practice that is discriminatory. *See Crawford*, 555 U.S. at 276-77; *see also Molla v. Colo. Serum Co.*, 929 P.2d 1, 2-3 (Colo. App. 1996). Implicitly, not all complaints about company management constitute protected conduct. *See e.g. Hinds*, 523 F.3d at 1203. An employee who merely questions or reports what he or she regards as unethical conduct by a co-worker or employer, has not engaged in protected activity. *See Florida-Kaclik v. SSPC*, 124 Fed. App'x 707, 709 (3d Cir. 2005); *see also Lohr v. Kimmel & Silverman, P.C.*, No. 10-5857, 2011 WL 4901365, *1 (E. D. Penn., Oct. 14, 2011).

Dr. Rodell argues that his opposition to hiring Mr. Jones was protected activity, and he relies on *Rocky Mtn. Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519, 526 (Colo. 1996) for the proposition that opposing criminal activity by an employer constitutes protected conduct.  In *Mariani*, a certified public accountant employed at-will complained to supervisors about questionable accounting practices. Among the areas of her concern were what she considered to be inappropriate inclusions and omissions in documents pertaining to an upcoming corporate merger. After making such complaints, she was terminated.  She sued for wrongful discharge. Although an at-will employee can ordinarily be terminated at any time, an exception exists if the termination violates public policy. In *Mariani*, the employee claimed, and the Colorado Supreme Court agreed, that termination for adherence to recognized rules of professional conduct (there, the Colorado State Board of Accountancy Rules of Professional Conduct) is sufficient to establish the public policy exception to the general rule with regard to at-will employees.

15

*Mariani* is distinguishable both legally and factually. It arose in the context of a wrongful termination and contains no determination as what is or is not protected conduct for purposes of a retaliation claim under CADA. In addition, it addressed a situation where a licensed professional was required to adhere to certain articulated ethical standards and placed in the untenable position of either doing as the employer required or violating standards upon which her license rested. That is not the situation in this case. Dr. Rodell was not a licensed professional forced to choose between compliance with professional obligations and employment. According to this record, he did not oppose hiring Mr. Jones because it would have constituted unlawful conduct by OIS, but because he thought it "inappropriate" and in "poor taste" because Mr. Jones's "father gave [Mr. Beckwith] the resume." He did not believe that Mr. Jones had the relevant experience in IT or sales, and instead thought that Mr. Jones was interviewed only because of his father's connections. These reasons, although perhaps valid, do not express concern about unlawful conduct by OIS, or even Mr. Jones. At most, Dr. Rodell's comments were directed to OIS's management and business practices. As a consequence, Dr. Rodell's comments are not protected conduct under CADA.

In the absence of evidence of protected conduct, Dr. Rodell cannot make a *prima facie* showing of retaliation under CADA, and OIS is entitled to summary judgment on this claim.

2.   Retaliation under the ADEA

The Court next examines whether Dr. Rodell has presented sufficient evidence to sustain an ADEA retaliation claim based on his complaints related to his compensation.

Like CADA, the ADEA prohibits retaliation against an employee who engages in protected activity. Protected activity includes reporting or complaining about actions by co-workers or supervisors that would constitute an unlawful discriminatory practice. *See Crawford*

*v. Metro. Gov't of Nashville*, 555 U.S. 271, 273-74 (2009). Although an employee is not required to use "magic words" in a report or complaint to qualify as protected activity, the employee must convey to the employer that the employee believes the employer has engaged in a practice made unlawful by the ADEA. *Hinds*, 523 F.3d at 1203. This is so because an employer cannot engage in unlawful retaliation if it does not know that the employee is opposing conduct made unlawful by statute. *Peterson*, 301 F.3d at 1188.

Simple complaints about unfair working conditions, disparate application of work rules, or other unwelcome acts do not implicate the evils that anti-discrimination laws are intended to prevent. *See, e.g., Zokari v. Gates*, 561 F.3d 1076, 1081-82 (10th Cir. 2009); *Peterson v. Utah Dep't of Corrs.*, 301 F.3d 1182, 1187-88 (10th Cir. 2002). For example, an employee's general complaints about management of his company or receipt of a poor performance review that do not allude to discrimination are not sufficient. *Hinds*, 523 F.3d at 1203; *see also Ashkin v. Time Warner cable Corp.*, 52 F.3d 140, 143-44 (7th Cir. 1995).

The case of *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187 (10th Cir. 2008), is particularly instructive. There, the employee  (1) complained about another employee's promotion and asked whether it was the result of age discrimination; (2) emailed his employer's CEO to complain of new performance evaluations, policies, and management philosophy and noting that he was older than many of the managers; and (3) complained that he was retaliated against because he gave negative feedback to his managers. *Id.* at 1202. The Tenth Circuit concluded that the employee's first two allegations could foreseeably constitute protected activity because they mentioned potential age discrimination, but the third could not because it did not refer to unlawful discrimination.

Dr. Rodell contends that his verbal and email complaints (to Mr. Beckwith, Mr. Booth, and others) about his reduction in pay constituted protected activity. He directs the Court to the email he sent to Mr. Beckwith on September 28, 2012, the day before he was terminated, in which he stated that he was "being treated unfairly by OIS," because in 2012, a new compensation plan was implemented that reduced his pay by 20%, "without any explanation." He asks Mr. Beckwith, "Has the whole company been asked to accept a 20% 2012 reduction in their total compensation[?] I'm betting not." In the email he also points to the departure of some employees, suggesting that the remaining employees should be given greater pay commiserate with added responsibilities. Dr. Rodell's verbal complaints were essentially the same – related to having to take a pay cut.

Dr. Rodell's written and oral communications did not reference any belief that these policies reflected age-based discrimination nor did they put OIS on notice that Dr. Rodell believed that the policies constituted unlawful discrimination. In his response brief, Dr. Rodell obliquely suggests that expressing concern over pay, alone, is sufficient to constitute protected activity. No authority is offered for this proposition, and the Court has found none to support it. In the absence of evidence sufficient to establish protected conduct, Dr. Rodell is unable to make a *prima facie* showing of retaliation under the ADEA. Accordingly, OIS is entitled to summary judgment in its favor on this claim.

**D.  Promissory Estoppel**

OIS also moves for summary judgment on Dr. Rodell's claims for promissory estoppel based on (1) terms contained in the October 17, 2007 offer letter; and (2) OIS's representation in its employee manual that it would not discriminate against Dr. Rodell. The Court has previously concluded that the three-year statute of limitation applicable to promissory estoppel claims bars

Dr. Rodell's claim for relief with regard to the promised stock option. Additionally, Dr. Rodell

concedes that his promissory estoppel claim based on age discrimination is not viable.

The First Amended Complaint (**#43**) alludes to a promissory estoppel claim for recovery

of "vacation benefits" that Dr. Rodell contends were promised. Dr. Rodell does not, however,

offer any evidence to demonstrate a *prima facie* promissory estoppel claim related to vacation

benefits. Indeed, there is no mention in the Response to any such claim. Accordingly, such claim

is deemed withdrawn.

### E.  Breach of Contract

OIS also moves for summary judgment on Dr. Rodell's breach of contract claim based on

(1) OIS's agreement not to discriminate against Dr. Rodell in the employee manual, and (2)

OIS's failure to provide him with the stock option promised in his offer letter.  OIS does not seek

summary judgment on Dr. Rodell's claim that OIS breached the employment contract with

regard to compensation due to him at the time of his separation.

Dr. Rodell concedes that he cannot bring a breach of contract claim based on OIS's

promise not to discriminate as a matter of law. As noted earlier, Dr. Rodell's claims related to the

incentive stock option are time-barred. Thus, Dr. Rodell's breach of employment contract claim

remains viable only relative to the payment of commissions, vacation pay, and severance.

### F.  Unjust Enrichment

OIS also moves for summary judgment on Dr. Rodell's claim of unjust enrichment as to:

(1) severance and vacation pay; and (2) sales commissions that he did not receive.

Under Colorado law, to recover under a theory of quasi-contract or unjust enrichment a

plaintiff bears the burden to prove that: (1) a benefit was conferred on the defendant by the

plaintiff; (2) the benefit was appreciated by the defendant; and (3) the benefit was accepted by

the defendant under such circumstances that it would be inequitable to allow the defendant to retain the befit without payment of its value. *Humphrey v. O'Connor*, 940 P.2d 1015, 1021 (Colo. App. 1996); *Does v. Rodriguez*, No. 06-cv-00805, 2007 WL 684117, *5 (D. Colo. 2007). Thus, unjust enrichment does not require there to be an express contract or even an implied-in fact contract. *Interbank Investments, LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003).

    1.  Severance and Vacation Pay

 OIS does not challenge Dr. Rodell's ability to demonstrate the elements of a claim for unjust enrichment, but instead argues that his claim for severance and vacation pay is barred as a matter of law because it is the subject of a contract between the parties. OIS is correct that a plaintiff generally cannot recover under a theory of unjust enrichment when the subject matter of the claim is addressed by an express or implied contract. *Interbank Investments*, 77 P.3d at 816. However, there is an exception to this rule that allows a party to recover on a quasi-contract theory when the party the has  no enforceable contract right. *Id.* Thus, a plaintiff may, in some circumstances, proceed on an alternative theory of unjust enrichment in the event the plaintiff is not deemed to have enforceable contractual rights. *Backus v. Aphishapa Land & Cattle Co.*, 615 P.2d 42, 44 (Colo. App. 1980); *see Lawry v. Palm*, 192 P.3d 550, 564 (Colo. App. 2008). In fact, under Colorado law, if the elements of unjust enrichment are met, "a plaintiff may be entitled to relief even in the face of a contract with a clearly expressed contrary intent, if justice requires." *Martinez v. Colo. Dep't of Human Servs.*, 97 P.3d 152, 159 (Colo. App. 2003).

    Because there is triable issue of fact regarding Dr. Rodell's rights under the employment agreement to recover severance pay and vacation pay, there is also a triable issue of whether Dr. Rodell is entitled to equitable relief if there is no remedy at law. The Court therefore denies

OIS's request for summary judgment on Dr. Rodell's unjust enrichment claim for severance and vacation pay. The parties should be prepared at the final pretrial conference to advise the Court as to whether they desire the Court to resolve this issue following receipt of a verdict or to seek an advisory ruling from the jury.

   2.   Sales Commissions

OIS contends that Dr. Rodell cannot present sufficient evidence to demonstrate the first and second elements of an unjust enrichment claim — that is, that a benefit was conferred upon and appreciated by OIS — because the commissions were not retained by OIS.

To meet the first and second elements of a claim for unjust enrichment, a plaintiff must show that the defendant received and appreciated a benefit. *DCB Const. Co., Inc. v. Central City Dev. Co.*, 965 P.2d 115, 120 (Colo. 1998). Under Colorado law, "a person confers a benefit upon another if he  . . . performs services beneficial to or at the request of the other. . . or in any way adds to the other's security or advantage." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1348 (10th Cir. 2008) (applying Colorado law to conclude that, in the context of unjust enrichment, "any form of advantage" constitutes a benefit).

In support of his unjust enrichment claim, Dr. Rodell testifies that in 2011 he earned $130,000 in commissions that was "arbitrarily split" with Mr. Caughel. Dr. Rodell further testifies that Mr. Beckwith admitted that Dr. Rodell was owed a little over $130,000, but that Mr. Beckwith believed Mr. Caughel should receive some share of Dr. Rodell's commissions. Dr. Rodell agreed, but that he complains that he ultimately had no say in the particular percentage allocated to Mr. Caughel.[10] Dr. Rodell described OIS's actions as akin to taking "money out of [his] pocket and g[iving] it to someone [else]."

---

[10] Dr. Rodell now testifies that he was not paid some $50,000 he earned in commissions.

But Dr. Rodell has not provided any evidence from which the Court could find that OIS benefitted from Dr. Rodell splitting commissions with Mr. Caughel. Instead, Dr. Rodell only asserts that it was unfair for OIS to provide Mr. Caughel with a larger percentage of Dr. Rodell's commission than Dr. Rodell thought was warranted, without giving him an opportunity to object. For example, Dr. Rodell does not establish that by splitting his commissions OIS was able to retain a valuable employee (Mr. Caughel) without paying him out of OIS's pocket. Nor does he contend that, had OIS not given Mr. Caughel some of Dr. Rodell's commissions, it would have been forced to pay Mr. Caughel from its profits. Accordingly, the Court finds that Dr. Rodell has not presented sufficient evidence to demonstrate a genuine dispute of material fact as to whether OIS retained a benefit conferred upon it by Dr. Rodell with regard to splitting his sales commissions. Thus, Dr. Rodell's unjust enrichment claim remains viable only with regard to the severance and vacation pay.

### G.  Wrongful Termination

Dr. Rodell's wrongful termination claim is based on what he characterizes as OIS's direction to engage in conduct in violation of public policy and 18 U.S.C. § 1001, *et seq.* Dr. Rodell contends that his after-the-fact objection to this conduct led to his termination.

To show a *prima facie* claim for wrongful discharge in violation of public policy, an employee must allege that (1) the employer directed the employee to perform an illegal act or prohibited the employee from performing a public duty or exercising an important privilege; (2) the action implicated a specific statute relating to public health, safety, or welfare, or undermined a clear public policy; (3) the employee was terminated for refusing to perform the act or forego the privilege; and (4) the employer was aware that the employee reasonably believed the act directed or the prohibition was unlawful. *Peru v. T-Mobile USA, Inc.*, 897 F.Supp.2d 1078, 1087

(D. Colo. 2012); *Martin Marietta Corp. v. Lorenz*, 893 P.2d 100, 109 (Colo. 1992). OIS contends that Dr. Rodell cannot present sufficient evidence to meet any of these elements.

The incident underlying the alleged illegal act is the 2011 representations made to SRC. In support of his contention that he was directed to perform an illegal act, Dr. Rodell offers evidence that while OIS and SRC were working on an Air Force contract, OIS was hired to deliver certain documents to SRC, but OIS did not send the two documents. Thus, OIS could not invoice SRC for such deliveries. Mr. Beckwith directed Dr. Rodell to contact Ms. Gregg and inform her that, though the documents had not been separately delivered, the content of the documents was included and incorporated into other documents that were delivered. Dr. Rodell testifies that he did so per Mr. Beckwith's instructions.

Dr. Rodell later learned that the representations he made to SRC were false. Dr. Rodell admits that, to the best of his knowledge, Mr. Beckwith honestly believed that the information had been provided to SRC, as did Dr. Rodell. Furthermore, when Mr. Beckwith later discovered that the information had not been delivered, he directed Dr. Rodell to apologize for the delay and offer to deliver the documents to Ms. Gregg at OIS's expense. However, Mr. Beckwith apparently changed his mind, and told Dr. Rodell that OIS would not allocate any resources to completing the missing documents unless it was paid to do so. Dr. Rodell believed that he was therefore coerced into making false statements to a government contractor, and indirectly, to the government, and expressed his concern with OIS's decision to Mr. Beckwith.

For purposes of analysis, the Court assumes without deciding that this factual scenario is sufficient for a *prima facie* showing of the first and second elements of wrongful termination. The Court turns its attention to the third element — causation.

Dr. Rodell has presented almost no evidence suggesting that his termination was in any way related to this 2011 incident. The record is void of any evidence that Dr. Rodell was terminated for refusing to perform an illegal act.  Indeed, Dr. Rodell apparently did what was asked of him.[11] He continued to work for OIS for over a year after the incident occurred, and he expressly opined that he was terminated due to his complaints about compensation. Specifically, he testifies that he was fired "Because I asked the question, why am I taking a pay cut." Mr. Booth concurs that the reason Dr. Rodell was fired was because "he lodged a written concern about his pay structure." Because Dr. Rodell has not presented sufficient evidence creating a genuine dispute of material fact as to whether he was terminated for refusing to engage in illegal activity, OIS is entitled to summary judgment on this claim.

## IV.   MOTION TO STRIKE JURY DEMAND

OIS requests that the Court strike Dr. Rodell's Motion for a Jury Demand on his promissory estoppel claim. Because there are remaining legal claims to try, such motion is moot. As noted earlier, the parties should advise the Court at the final pretrial conference whether they prefer equitable claims to be resolved by the Court after a verdict is received or to seek an advisory ruling by the jury.

## V.   CONCLUSION

**IT IS THEREFORE ORDERED** that OIS's Motion for Partial Summary Judgment (**#58**) is **GRANTED in PART** and **DENIED in PART**. Summary judgment is entered in favor of OIS and against Dr. Rodell on the claims for age discrimination, retaliation, promissory estoppel, and wrongful termination.  The claims remaining for trial are: (1) violation of the Colorado Wage Claim Act; (2) breach of contract for severance, vacation pay, and commissions

---

[11] Dr. Rodell again relies on *Rocky Mountain Hosp. & Med. Serv. v. Mariani*, 916 P.2d 519 (Colo. 1996).   But as noted earlier, such case is not analogous either legally or factually.

owed to Dr. Rodell upon his termination; or, alternatively, (3) unjust enrichment for severance and vacation pay.[12]

OIS's Motion to Strike Plaintiff's Jury Demand (**#30**) is **DENIED**.

The parties are directed to begin preparation of a proposed Final Pretrial Order, in accordance with the Trial Preparation Order (**#29**), and shall jointly contact chambers within 14 days of this Order to schedule a final pretrial conference.

Dated this 30th day of September, 2015.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge

---

[12] Though Dr. Rodell has no remaining federal law claims, the Court retains jurisdiction under 29 U.S.C. § 1332.